# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JACQUETTA HAWKINS, et al., | CASE NO. 5:11CV2753 |
| PLAINTIFFS, | JUDGE SARA LIOI |
| vs. | |
| | MEMORANDUM OPINION AND ORDER |
| SUMMIT COUNTY, OHIO, et al., | |
| DEFENDANTS. | |

## I. INTRODUCTION

Before the Court is plaintiffs' motion for preliminary injunction. (Doc. No 2.) Defendants opposed the motion. (Doc. No. 20.) After a hearing, the magistrate judge issued a report and recommendation (Doc. No. 27) recommending that plaintiffs' motion be denied. Plaintiffs filed objections to the report and recommendation (Doc. No. 31), defendants filed a reply in support of the report and recommendation (Doc. No. 33), and plaintiffs supplemented their objections (Doc. No. 35).

For the reasons set forth below, plaintiffs' motion is DENIED AS MOOT.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are female deputies employed at the Summit County Jail ("SCJ"). (Compl. [Doc No. 1] ¶ 7.)[1] The SCJ is a large, full-service jail, housing both

---

[1] The United States of America intervened in this action as Plaintiff-Intervenor after the briefing of this motion and the magistrate judge's issuance of her report and recommendation.

1

male and female inmates. (Pls.' Mot. for Prelim. Inj. Ex. 5 57.)[2] Defendant Summit County Sheriff's Office operates the SCJ for defendant Summit County, Ohio. (*Id.*) Defendant Drew Alexander is Sheriff of Summit County, Ohio (Compl. ¶ 12), and Defendant Gary James is Chief Deputy in charge of the Corrections Division of the Summit County Sheriff's Office. (Hr'g Tr. [Doc. No. 29] 429.) James controls "the entire [SCJ] operation," (*Id.* at 430), including staffing (*Id.* at 431–32).

On August 30, 2010, defendants filed an application with the Ohio Civil Rights Commission ("OCRC") for a bona fide occupational qualification ("BFOQ") for certain job classifications at the SCJ. (Defs.' Opp'n to Pls.' Mot. Ex. B [Doc. No. 20-2] 206.)[3] In their application, defendants sought to designate a specific number of positions within certain job classifications at the SCJ as being strictly for male or strictly for female deputies. *Id.* Among the facts claimed to necessitate the BFOQ application, defendants cited the inmate population at the SCJ—81.59% male, 18.41% female—and an Ohio statute requiring strip searches of inmates to be performed by deputies of the same sex as the inmate being searched. (*Id.* at 207.)[4] Defendants stated in their application that, because the seniority system in place at SCJ did not take gender into account, the positions responsible for strip searching inmates were filled with almost all women by day and almost all men by night, making it more difficult for the SCJ to comply with the

---

[2] All references to specific page numbers in the record refer to the continuous page numbering applied by the electronic docketing system.

[3] Defendants filed the BFOQ application under § 4112.02(E) of the Ohio Revised Code and § 4112-3-15 of the Ohio Administrative Code. Under federal law, when gender discrimination is alleged under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., a defendant may assert as a defense the existence of a BFOQ. *Everson v. Michigan Department of Corrections*, 391 F.3d 737, 747–48 (6th Cir. 2004).

[4] Section 2933.32(A)(6) of the Ohio Revised Code provides, "A body cavity search or strip search shall be conducted by a person or persons who are of the same sex as the person who is being searched and the search shall be conducted in a manner and in a location that permits only the person or persons who are physically conducting the search and the person who is being searched to observe the search."

statute. (*Id.* at 208.) In addition, defendants claimed to seek the BFOQ so that only female deputies would patrol the section of the jail housing female inmates, thereby respecting female inmates' privacy concerns and helping to prevent sexual abuse. (*Id.*)

The OCRC granted defendants' BFOQ application in part on January 26, 2011, finding, based on the application, that "a minimum number of positions on each shift and duty assignment must be set aside for members of the appropriate sex." (Mot. Ex. 5 57.) The BFOQ was granted "only insofar as it is necessary for the Summit County Sheriff's Office to meet the requirements of [Ohio Administrative Code] section 5120:1-8-17(D)(1),"[5] and certification was "strictly limited to the number of positions necessary to meet the operational needs of the jail facility." (*Id.* at 57–58.)

Plaintiffs, along with the other Summit County sheriff's deputies, are members of the Fraternal Order of Police ("FOP"). (Opp'n Ex. D [Doc. No. 20-4] 242.) FOP members raised concerns about the then-pending BFOQ application during negotiation of the current collective bargaining agreement. (Hr'g Tr. 92–93.) As part of negotiating the agreement, the FOP and the Sheriff's Office agreed to a memorandum of understanding regarding the BFOQ, which authorized mediator Rob Stein to resolve issues surrounding shift bidding created by the implementation of the BFOQ. (Opp'n Ex. D 289.) After an arbitration hearing, Mr. Stein issued an order November 30, 2011 laying out the 2012 shift and day-off bidding process for the SCJ. (Opp'n Ex. C [Doc. No. 20-3] 241.) Around that same time, the Sheriff's Office issued multiple memoranda explaining

---

[5] Section 5120:1-8-17(D)(1) of the Ohio Administrative Code provides, with respect to a jail's written staffing plan, "[t]he plan shall include all posts and functions, a calculated shift relief factor, sufficient numbers of male and female jail staff on-duty and available to perform sensitive functions and procedures as necessary by prisoner gender, and total number of employees required to fill identified posts and functions."

and clarifying the procedure. (Mot. Exs. 1 [Doc. No. 3–1] (Nov. 10, 2012), 2 [Doc. No. 3–2] (Nov. 14, 2012), 3 [Doc. No. 3–3] (Dec. 5, 2012).)

Plaintiffs filed suit on December 20, 2011, alleging unlawful discrimination under the Fourteenth Amendment, Title VII, and the Supremacy Clause and seeking, among other things, a declaration that the OCRC's BFOQ certification is null and void and a permanent injunction prohibiting defendants from making overbroad gender-specific work assignments. (Compl. [Doc. No. 1].) Along with their complaint, plaintiffs also filed the subject motion for preliminary injunction to prohibit defendants from segregating "all or most Deputy Sheriff positions" and "thus overreaching" defendants' BFOQ exemption from the OCRC. The magistrate judge held a hearing on plaintiffs' motion December 30, 2011 and issued her report and recommendation January 3, 2012, recommending that plaintiffs' motion be denied. (Report and Recommendation 307.)

While the Court's review of plaintiffs' motion and the magistrate judge's report and recommendation was pending, on June 28, 2012, the parties filed a supplement to their first joint status report. (Supplement to First Joint Status Report of Parties [Doc. No. 69].) The supplement contained a memo from defendant James to SCJ personnel, announcing that the BFOQ was being vacated and that the current 2012 bid schedule was cancelled. (*Id.* at 1070.)

### III. ANALYSIS

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*,

4

451 U.S. 390, 395 (1981). Since Chief James has "vacated" the BFOQ "[b]ecause of the on[*sic*] going Federal lawsuit involving the BFOQ" (Supplement to First Joint Status Report 1070), cancelled the 2012 Shift/Day-Off Bid Schedule, which had been based on the BFOQ, and proceeded with rebidding of the 2012 Shift/Day-Off Schedule, the need for a preliminary injunction has been obviated. The Court, therefore, denies as moot, and without prejudice, plaintiffs' motion for preliminary injunction (Doc. No. 2),[6] with the proviso that, should the BFOQ be revived at any point during the pendency of this lawsuit, plaintiffs may renew their motion and seek expedited review.[7]

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for preliminary injunction is DENIED AS MOOT.

**IT IS SO ORDERED**.

Dated: September 27, 2012

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

---

[6] Although the *motion* may have been rendered moot, the current cessation of the application of the BFOQ does not render the entire *case* moot. *See Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) ("as a general rule, 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot.' ") (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)).

[7] The Court explicitly states that in giving permission to plaintiffs to renew their motion in the event that the BFOQ is subsequently revived, the Court is not expressing an opinion as to the merits of the motion or of plaintiffs' objections to the report and recommendation.