IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUETTA HAWKINS, et al., | ) | CASE NO. 5:11-cv-02753 |
| | ) | |
| | ) | JUDGE SARA LIOI |
| | ) | |
| Plaintiffs, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| SUMMIT COUNTY, OHIO, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### I. Introduction

On December 17, 2015, the Court referred this matter to the undersigned for a Report and Recommendation regarding the parties' October 5, 2015 Joint Notice of Dispute Pursuant to Consent Decree[1] (Doc. 120), Brief Related to BFOQ for Summit County Jail (Doc. 123), and Memorandum in Opposition of Summit County's Proposed Sex-Specific Staffing Plan and in Support of the United States' Plan (Doc. 124).[2]

---

[1] Paragraph 61 of the Consent Decree (Doc. 104-1, as ordered by the Court (Doc. 112)) provides:

> The Parties to this Decree will attempt to resolve informally any disputes that may occur under the Decree. If private Plaintiffs, the United States and Summit County are unable to reach agreement after informally seeking to resolve a dispute, the issue may be submitted by any Party to the Court for resolution upon at least thirty (30) days written notice to the other parties.

Doc. 104-1, p. 20, ¶ 61.

[2] The Joint Notice of Dispute was filed by Plaintiff-Intervenor United States ("U.S." or "DOJ") and Defendants Summit County, et al ("County"). Doc. 120, p. 1. As indicated in the Joint Notice of Dispute, Plaintiffs' counsel

1

## II. Parties' Dispute

The parties have been unable to reach agreement as to the number of female deputies necessary to ensure 24/7 coverage of two female posts at the main Summit County jail facility during each shift.  Doc. 120, p. 3, ¶ 8; Doc. 123, pp. 1-2; Doc. 124, pp. 2-4.  Further, the parties dispute whether the Consent Decree covers only the main Summit County jail facility or whether it also applies to the Glenwood minimum security jail facility ("Glenwood").  Doc. 123, p. 2; Doc. 124, pp. 2-3.

### A. The County's position

The County asserts that the Court should approve its Bona Fide Occupational Qualification ("BFOQ") staffing plan, which, if approved, would allow the County to assign three female deputies at three posts for each of the three daily shifts, a total of 18 female deputies.  Doc. 123, p. 9; Doc, 123-5.  The three posts include an intake post and a security-female pod post at Summit County's main jail located at 205 East Crosier Street, Akron, Ohio 43111 and one post at Glenwood located at 40 East Glenwood Avenue, Akron, Ohio 44304.  Doc. 123-5.  The County contends that Glenwood is covered by the Consent Decree and, therefore, consideration should be given to its staffing plan regarding that facility.  Doc. 123, p. 2.

### B. United States' position

---

authorized counsel for the U.S. to represent that that they had agreed that the dispute should be brought to the Court. Doc. 120, p. 1.  Further, during the Court's October 30, 2015, telephonic status conference, Plaintiffs' counsel informed the Court that he would remain in contact with counsel for the U.S. to determine whether it would be necessary for Plaintiffs to file their own brief.  *See* October 30, 2015, Docket entry – Minutes of proceedings. Plaintiffs have not filed their own brief.

The DOJ agrees that sex is a BFOQ under Title VII for one post in intake and one post in security-female pod and that a sex-specific staffing plan is required to ensure coverage of those two posts.  Doc. 124, pp. 4, 5.  However, the DOJ argues that the County cannot rely on the BFOQ exception to Title VII's prohibition against sex discrimination to support its proposed staffing planning because the County cannot show that the extent of the sex discrimination required by its proposed staffing plan is reasonably necessary to the normal operation of the jail.  Doc. 124, pp. 2, 4-7, 9-15.  The DOJ requests that the Court approve its recommended staffing plan, which would allow the County to ensure 24 hour per day coverage at the intake and security-female pod posts at the Summit County main facility through assignment of two female deputies at the two posts for each of the three daily shifts, a total of 12 female deputies.  Doc. 124, pp. 7-9; Doc. 124-1.

With respect to the County's proposed staffing plan for one position at Glenwood, the DOJ contends that it has no authority to review or approve any sex-specific staffing plan at Glenwood because Glenwood is not covered by the Consent Decree and it should not be subject to a Court order under the Consent Decree dispute resolution process.[3]  Doc. 124, pp. 2-3.

### III. Analysis

Under Title VII, the BFOQ defense allows for discrimination on the basis of sex "in those certain instances where . . . sex . . . is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise."  *Everson v. Michigan Dept. of Corrections*, 391 F.3d 737, 747-748 (6th Cir. 2004); *see also Grant v. Gen. Motors Corp.*, 908 F.2d 1303, 1310 (6th Cir. 1990).  The BFOQ exception is "meant to be an extremely narrow

---

[3] The DOJ also argues that the County's reliance upon the "2011 BFOQ policy" that was approved by the Ohio Civil Rights Commission should have no bearing upon resolution of the current dispute since it is the same policy that led to the filing of the lawsuit in this case.  Doc. 124, p. 3.

exception to the general prohibition of discrimination on the basis of sex." *Grant*, 908 F.2d at 1310 (quoting *Dothard v. Rawlinson*, 433 U.S. 321, 334 (1977)); *see also Everson*, 391 F.3d at 748.  "[A]n employer must have a basis in fact for its belief that gender discrimination is reasonably necessary –not merely reasonable or convenient-to the normal operation of its business." *Everson*, 391 F.3d at 748 (internal quotations and citations omitted).

A.      **Main Summit County jail facility**

Pursuant to the Consent Decree, the County retained Rodney C. Miller to perform a staffing analysis and provide his opinion regarding a BFOQ.  Doc. 123, p. 6; Doc. 123-1.  Mr. Miller calculated a shift relief factor of 5.47 full-time equivalent employees to fill one 24/7 post for a year.  Doc. 123-1, p. 2.  According to Mr. Miller, "[t]he Shift Relief Factor provides a mathematical minimum indication of staffing needs."  Doc. 124-2.  The shift relief factor is calculated by dividing the number of hours of coverage needed for the post by the Net Annual Work Hours ("NAWH").[4]  Doc. 123-1, p. 2; Doc. 124, pp. 8-9.

The County and its expert contend that the shift relief factor is to be used only as a floor for the minimum level of coverage needed, not a ceiling, because the shift relief factor calculation does not take into account real world scheduling issues and the need to allow for flexibility for planned and unplanned absences.  Doc. 123, p. 6; Doc. 123-1, p. 2.  Thus, even though much higher than the 5.47 shift relief factor, the County argues that the assignment of a total of 18 female deputies (9 per post) is reasonably necessary to allow for sufficient coverage of the two female-only posts at the main Summit County jail facility.  Doc. 124, p. 8.

---

[4] The NAWH represents the average number of hours worked by a deputy during one year.  Doc. 123-1, p. 2; Doc. 124, p. 8.  Mr. Miller calculated that the NAWH for female deputies was 1,601.3 hours, which he calculated to be 76.8% of the 2,086 hours for which a female deputy is scheduled.  Doc. 123-1, p. 2.

The DOJ acknowledges that some degree of sex discrimination is reasonably necessary to the County's normal operation of the jail.  Doc. 124, p. 4.  However, the DOJ contends that the County's proposed sex-specific staffing plan cannot be justified as reasonably necessary to the normal operation of the jail.[5]  Doc. 124, pp. 4, 9-15.  As set forth above, the DOJ's proposal contemplates the assignment of 12 female deputies (or 6 per post).  Doc. 124, pp. 7-8.

Having considered the briefing submitted herein, the undersigned finds that assignment of six female deputies for each of the two female-only positions at the main Summit County jail facility is supported by the shift relief factor of 5.47 as calculated by the County's expert.  The County has failed to demonstrate a sufficient factual basis to support the need for more than six female deputies at this time for each of the two female-only positions at the main Summit County jail facility.

For example, the County's claim that additional female deputies are needed to account for a female deputy's 25% absenteeism rate is without merit because the County's expert took that fact into consideration when calculating the shift relief factor.  *See* Doc. 123-1, p. 2 (Mr. Miller notes that, on average female deputies work 76.8% of the 2,086 hours they are scheduled, and, upon consideration of that information, found a shift relief factor of 5.47).  Additionally, since the calculated shift relief factor took into consideration planned and unplanned absences (Doc. 123-1, p. 4 (Figure 3 showing NAWH calculation)), the County's claim that additional female deputies are necessary to avoid unnecessary overtime costs is unpersuasive.  Also, in light of the availability of other alternatives such as moving a female deputy from another part of the jail who is working the same shift, the County has not demonstrated that overtime will always be required.  Further, based on Mr. Miller's analysis, male deputies have a similar rate of absence

---

[5] The DOJ supports its proposal with the shift relief factor calculated by the County's own expert as well as its own expert's analysis and report.  Doc. 124, pp. 7-9; Doc. 124-2.

as women (Doc. 123-1, p. 4 (Figure 3)), which could also result in the need for overtime. Doc. 124, p. 13. The County's reliance upon letters from three female deputies working for the County Sherriff to support its claim that additional staffing beyond two female deputies per each female-only post, per shift, is reasonably necessary to the normal operations of the jail is misplaced because those letters address problems with the current staffing arrangements and the desire for implementation of a BFOQ. Doc. 123-3. The letters do not pertain specifically to either of the proposed staffing plans.

Reasoned decisions of prison administrators are entitled to a level of deference. *Everson*, 391 F.3d at 750 (holding that the district court erred in finding that the female gender was not a BFOQ for certain positions within the Michigan Department of Corrections' female facilities). However, as set forth above, the BFOQ exception is "meant to be an extremely narrow exception." *Grant*, 908 F.2d at 1310. The County has not provided a factual basis to support expanding the sex-specific staffing of the County jail beyond what its expert's shift relief factor indicates is appropriate.

In declining to recommend adoption of the County's staffing proposal, the undersigned is not ignoring the rule of deference regarding decisions of prison administrators or second-guessing the prison administrator's determination that a BFOQ exists for the intake and female-security pod positions at the Summit County main jail. Instead, having been asked, pursuant to the parties' Consent Decree, to resolve the parties' dispute regarding how to staff those positions, the undersigned finds that, based on the information provided, the DOJ's less discriminatory proposed staffing plan, which is supported by and consistent with the shift relief factor of 5.47 calculated by the County's expert, should be adopted.

**B.     Glenwood jail facility**

The County asserts that the County and the Sheriff operate Glenwood, a minimum security facility, which houses both male and female inmates and requires security staffing by deputies of the Summit County Sheriff's Office and that some of the Private Plaintiffs (hereinafter "individual Plaintiffs")[6] have been assigned to Glenwood.  Doc. 123, p. 2.  Thus, the County contends that under the Consent Decree consideration of a sex-specific staffing plan is required for Glenwood.  Doc. 123, p. 2.

The DOJ argues that Glenwood is not covered by the Consent Decree because the investigation and litigation leading to the Consent Decree pertained to a policy enacted for the Summit County Jail's main facility, not Glenwood; at the time the lawsuit was initiated, none of the individual Plaintiffs worked at Glenwood; and the Consent Decree does not refer to Glenwood.  Doc. 124, pp. 2-3.   Thus, the DOJ contends that it has no authority to review or approve any sex-specific staffing plan at Glenwood; Glenwood should not be subject to a Court order under the Consent Decree dispute resolution process; and the DOJ has not been willing to discuss with the County any BFOQ for Glenwood.  Doc. 123, p. 2; Doc. 124, pp. 2-3.

Glenwood is operated by the Summit County Sheriff.  Doc. 123, p. 2; *see also* https://sheriff.summitoh.net/index.php/correctionsjail (Summit County website indicating that the Summit County Sheriff's Office provides security services at and operates, in conjunction with the Oriana House, Inc., the Glenwood Jail, which provides treatment for DUI offenders and overflow housing of non-violent Summit County Jail prisoners).   Although none of the individual Plaintiffs may have been assigned to Glenwood at the time the litigation commenced,

---

[6] As set forth in the Consent Decree, "Private Plaintiffs" refer to the individual Plaintiffs, i.e., Jacquetta Hawkins, et al.  Doc. 104-1, p. 4, ¶ 12.

7

according to the County, at various times since then, some of them have been assigned to Glenwood.  Doc. 123, p. 2.

The Consent Decree provides a definition for "Summit County Jail."  In particular, the Consent Decree defines "Summit County Jail" as follows:

> [T]he jail operated by the Summit County Sheriff *and* where private Plaintiffs *are or* have been *assigned* to work as deputy sheriffs.

Doc. 104-1, p. 4, ¶ 14 (emphasis supplied).  The foregoing language of the Consent Decree contemplates that work assignments will occur after the commencement of the litigation and after the date of the Consent Decree.  Further, the Consent Decree is effective for at least five years and contemplates possible modifications to the new Staffing Plan.  Doc. 104-1, p. 12, ¶ 38; Doc. 104-1, p. 22, ¶ 70.  Accordingly, the fact that no individual Plaintiffs were assigned to Glenwood at the time the litigation commenced or the Consent Decree was entered is not a basis for excluding Glenwood from the terms of Consent Decree.

The definition of "Summit County Jail" in the Consent Decree is not limited to a specific address.  Since the County *operates* Glenwood and individual Plaintiffs *are* or *have been* assigned to Glenwood, the Glenwood facility falls within the definition of "Summit County Jail" as contained in the Consent Decree.  Accordingly, the parties should be required to engage in discussions pursuant to the Consent Decree regarding the County's sex-specific staffing plan for Glenwood.

### IV. Recommendation

The parties have agreed that a sex-specific staffing plan for the two female-only posts at the main Summit County jail facility is reasonably necessary to the normal operation of the Summit County jail but disagree as to how many female deputies should be assigned to those

positions in order to have 24/7 staffing. Without a more sufficient factual basis to support the County's sex-specific staffing plan, the undersigned **RECOMMENDS** that the Court adopt the DOJ's less discriminatory proposal, which contemplates the assignment of a total of 12 female deputies – 6 female deputies for each of the two female-only positions located at the main Summit County jail facility. The DOJ's staffing plan is supported by the shift relief factor calculated by the County's expert. Moreover, under the Consent Decree, if, after implementation, experience demonstrates that a staffing plan that provides for the assignment of six female deputies for each of the two female-only positions at the main Summit County jail facility does not ensure 24/7 coverage of the female-only positions, the County may later seek a change or modification to the staffing plan. *See* Doc. 104-1, p. 12, ¶ 38 (Consent Decree provision that provides that the County will conduct a new staffing plan every 18-24 months and provides for the County's ability to propose changes or modifications to the Staffing Plan.); *see also* Doc. 124, pp. 14-15 (DOJ's recognition that there is the possibility that there could be modifications to the staffing plan at a later time).

The undersigned also **RECOMMENDS** that the Court find that Glenwood falls within the definition of "Summit County Jail" in the Consent Decree and order the parties to engage in discussions regarding the County's proposed staffing plan with respect to Glenwood in accordance with the terms of the Consent Decree. *See* Doc. 104-1, p. 8, ¶¶ 23-24.

January 11, 2016

　　　　　　　　　　　　　　　　　　　　　　　／s／ Kathleen B. Burke
U.S. Magistrate Judge
Kathleen B. Burke

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the

9

right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).